UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| STEVEN J. P., | ) No. CV 19-4330-PLA |
| Plaintiff, | ) **MEMORANDUM OPINION AND ORDER** |
| v. | ) |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) |
| Defendant. | ) |

**I.**

**PROCEEDINGS**

Steven J. P.[1] ("plaintiff") filed this action on May 18, 2019, seeking review of the Commissioner's[2] denial of his applications for a period of disability and Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The parties filed Consents

---

[1] In the interest of protecting plaintiff's privacy, this Memorandum Opinion and Order uses plaintiff's (1) first name and middle and last initials, and (2) year of birth in lieu of a complete birth date. See Fed. R. Civ. P. 5.2(c)(2)(B), Local Rule 5.2-1.

[2] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul, the newly-appointed Commissioner of the Social Security Administration, is hereby substituted as the defendant herein.

to proceed before a Magistrate Judge on June 11, 2019, and June 25, 2019. Pursuant to the Court's Order, the parties filed a Joint Submission (alternatively "JS") on January 7, 2020, that addresses their positions concerning the disputed issue in the case. The Court has taken the Joint Submission under submission without oral argument.

## II.

## BACKGROUND

Plaintiff was born in 1966. [Administrative Record ("AR") at 27, 217, 223.] He has past relevant work experience as a janitor. [Id. at 26, 66.]

On September 1, 2010, plaintiff filed an application for a period of disability and DIB and an application for SSI payments alleging in both that he has been unable to work since December 23, 2013. [Id. at 15; see also id. at 217-22, 223-26.] After his applications were denied initially and upon reconsideration, plaintiff timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). [Id. at 161-63.] A hearing was held on December 27, 2017, at which time plaintiff appeared represented by an attorney, and testified on his own behalf. [Id. at 36-72.] A vocational expert ("VE") also testified. [Id. at 65-71.] On May 23, 2018, the ALJ issued a decision concluding that plaintiff was not under a disability from December 23, 2013, the alleged onset date, through May 23, 2018, the date of the decision. [Id. at 15-28.] Plaintiff requested review of the ALJ's decision by the Appeals Council. [Id. at 215.] When the Appeals Council denied plaintiff's request for review on March 25, 2019 [id. at 1-5], the ALJ's decision became the final decision of the Commissioner. See Sam v. Astrue, 550 F.3d 808, 810 (9th Cir. 2008) (per curiam) (citations omitted). This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Berry v. Astrue, 622

F.3d 1228, 1231 (9th Cir. 2010) (citation omitted).

"Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means -- and means only -- 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted); Revels v. Berryhill, 874 F.3d 648, 654 (9th Cir. 2017). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Revels, 874 F.3d at 654 (internal quotation marks and citation omitted). However, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." Id. (quoting Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014) (internal quotation marks omitted)). The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Id. (internal quotation marks and citation omitted); see also SEC v. Chenery Corp., 318 U.S. 80, 87, 63 S. Ct. 454, 87 L. Ed. 626 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. Garcia v. Comm'r of Soc. Sec., 768 F.3d 925, 930 (9th Cir. 2014) (quoting 42 U.S.C. § 423(d)(1)(A)).

### A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006) (citing Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Lounsburry, 468 F.3d at 1114. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. § 404, subpart P, appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). If the claimant meets this burden, a prima facie case of disability is established. Id. The Commissioner then bears the burden of establishing that the claimant is not disabled because there is other work existing in "significant numbers" in the national or regional economy the claimant can do, either (1) by the testimony of a VE, or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R. part 404, subpart P, appendix 2. Lounsburry, 468 F.3d at 1114. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 721, 828 n.5 (9th Cir. 1995); Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since

December 23, 2013, the alleged onset date.[3] [AR at 17.] At step two, the ALJ concluded that plaintiff has the severe impairments of degenerative disc disease of the lumbar and cervical spines; arachnoid cyst; epilepsy; seizure disorder; right knee arthralgia; and depressive disorder. [Id.] At step three, the ALJ determined that plaintiff does not have an impairment or a combination of impairments that meets or medically equals any of the impairments in the Listing. [Id. at 18.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[4] to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),[5] as follows:

> [He] can lift/carry twenty pounds occasionally and ten pounds frequently. [He] can sit for six hours, stand for six hours, and walk for six hours in an eight-hour workday. [He] can push/pull as much as he can lift/carry. [He] can frequently use his right hand for fingering. [He] can frequently climb ramps and stairs and never climb ladders, ropes, or scaffolds. [He] can frequently stoop, kneel, crouch, and crawl. [He] must avoid exposure to unprotected heights and moving mechanical parts. [He] can occasionally be exposed to work in extreme heat. [He] is limited to performing simple, routine tasks and simple work-related decisions. [He] can frequently respond appropriately to supervisors and coworkers and occasionally respond appropriately to the public. [He] is limited to simple work-related decisions.

[Id. at 20.] At step four, based on plaintiff's RFC and the testimony of the VE, the ALJ concluded that plaintiff is unable to perform his past relevant work as a janitor. [Id. at 26, 66-67.] At step five, based on plaintiff's RFC, vocational factors, and the VE's testimony, the ALJ found that there are jobs existing in significant numbers in the national economy that plaintiff can perform, including

---

[3] The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through December 31, 2018. [AR at 17.]

[4] RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007) (citation omitted).

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

work as a "housekeeping cleaner" (Dictionary of Occupational Titles ("DOT") No. 323.687-010), as a "product trimmer" (DOT No. 732.684-046), and as a "machine tender" (DOT No. 363.685-010). [AR at 28, 68-69.] Accordingly, the ALJ determined that plaintiff was not disabled at any time from the alleged onset date of December 23, 2013, through May 23, 2018, the date of the decision. [Id. at 28.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ erred when he assessed plaintiff's residual functional capacity for the mental requirements of work. [JS at 5.] As set forth below, the Court agrees with plaintiff, in part, and remands for further proceedings.

### A. LEGAL STANDARD

An RFC is "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." Soc. Sec. Ruling ("SSR")[6] 96-9p, 1996 WL 374184, at *1 (1996). It reflects the most a claimant can do despite his limitations. See Smolen v. Chater, 80 F.3d 1273, 1291 (9th Cir. 1996). An RFC must include an individual's functional limitations or restrictions as a result of all of his impairments -- even those that are not severe (see 20 C.F.R. § 404.1545(a)(1)-(2), (e)) -- and must assess his "work-related abilities on a function-by-function basis." SSR 96-9p, 1996 WL 374184, at *1; see also Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009) ("an RFC that fails to take into account a claimant's limitations is defective"). An ALJ errs when he provides an incomplete RFC ignoring "significant and probative evidence." Hill v. Astrue, 698 F.3d 1153, 1161-62 (9th Cir. 2012) (further noting that the error is not harmless when an ALJ fails to discuss significant and

---

[6] "SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." Holohan v. Massanari, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001) (citations omitted).

probative evidence favorable to a claimant's position because when the RFC is incomplete, the hypothetical question presented to the VE is incomplete and, therefore, the ALJ's reliance on the VE's answers is improper). An RFC assessment is ultimately an administrative finding reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(2). However, an RFC determination must be based on all of the relevant evidence, including the diagnoses, treatment, observations, and opinions of medical sources, such as treating and examining physicians. Id. § 404.1545. A district court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005); Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).

**B.     ANALYSIS**

   **1.     Background**

Plaintiff argues that the ALJ erred in formulating the RFC by failing to make explicit findings regarding the March 28, 2016, opinion of reviewing examiner Timothy Schumacher, Ph.D. [AR at 118-20], whose opinion the ALJ gave "greater weight," as Dr. Schumacher "had an opportunity to review evidence submitted at a later stage in the proceedings." [JS at 7 (citing AR at 24-25).] Plaintiff notes that the ALJ properly rejected the opinions of other reviewing consultants but, although he gave greater weight to Dr. Schumacher's opinion, he nevertheless failed to articulate "some basis for rejecting" certain of Dr. Schumacher's findings. [Id.] Specifically, this includes the following findings: (1) plaintiff could understand and remember "shorter-simple[r] . . . 1 to 2 step job instructions" and could "complete routine 1 to 2 step assignments for up to 2 [hour] intervals"; (2) plaintiff had moderate limitations interacting appropriately with the general public, and in accepting instruction and responding appropriately to criticism from supervisors due to increased stress from close interactions with the general public and from critical supervision from supervisors aggravating his mood-anger symptoms, and could engage in routine contact with coworkers and supervisors; and (3) plaintiff needed brief reminders to follow through on work assignment changes. [Id. at 7-10 (citing AR at 118-20).] Plaintiff submits that the ALJ's RFC determination was deficient because the ALJ gave no reasons for rejecting "in whole or in part any of the aspects

of Dr. Schumacher's expressions" of plaintiff's RFC.  [Id.]

### 2. One- and Two-Step Instructions

On November 21, 2015, Henry J. Venter, Ph.D., a licensed clinical psychologist, performed a psychological consultative examination.  [Id. at 626-35.]  As relevant to this issue, Dr. Venter concluded that plaintiff had no impairment in his ability to understand, remember, and carry out simple one- or two-step job instructions; to do detailed and complex instructions; or to maintain concentration and attention, persistence and pace.  [Id. at 634.]  Similarly, psychiatric consultant Kevin Gregg, M.D. on initial determination, found that plaintiff's mental impairment was "not severe."  [Id. at 24 (citing id. at 81).]  The ALJ gave the opinions of Dr. Venter and Dr. Gregg "little weight, as they were not supported by the medical evidence of record."  [Id. at 24, 25.]  The ALJ noted that treatment records reflect that plaintiff "has a history of reported anger issues and explosive outbursts with frequent verbal arguments with strangers," and that on examination on February 9, 2016, plaintiff exhibited "excessive speech, tangential associations, and ruminations," all of which "support greater limitations than provided for by" Dr. Venter.  [Id.]

In contrast to the opinions of Dr. Venter and Dr. Gregg, in his March 28, 2016, opinion on redetermination, Dr. Schumacher determined that plaintiff has moderate limitations in his ability to understand and remember detailed instructions and "remains able to understand and remember shorter-simpler 1 to 2 step job instructions"; has moderate limitations in his ability to maintain attention and concentration for extended periods; has moderate limitations in his ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and is able to "complete routine 1 to 2 step assignments for up to 2 [hour] intervals."  [Id. at 119-20.]

The ALJ noted that on initial review, Dr. Gregg opined that plaintiff's mental impairments were "not severe," but that on reconsideration, Dr. Schumacher opined that plaintiff's mental impairments "are severe."  [Id. at 24-25.]  The ALJ explicitly gave "[g]reater weight" to Dr. Schumacher's opinion because he had an opportunity to review "evidence submitted at a later

stage in the proceedings." [Id. at 25.] As relevant to Dr. Schumacher's opinions, the ALJ limited plaintiff to "performing simple, routine tasks and work-related decisions." [Id. at 20.]

Plaintiff contends that the ALJ failed to give a reasoned decision for rejecting the opinions of Dr. Schumacher that plaintiff was limited to 1-2 step instructions and 1-2 step assignments for up to two-hour intervals. [JS at 17-18.] He notes that Dr. Schumacher's "narrative explanations" regarding plaintiff's moderate limitations in remembering instructions and maintaining attention and concentration for extended periods, i.e., limiting plaintiff to shorter-simpler one- to two-step instructions, or to "routine 1 to 2 step assignments" due to these limitations, "[are] the residual functional capacity assessment" and, therefore, were entitled to "specific consideration" by the ALJ. [Id. at 17.] Plaintiff further contends that Dr. Schumacher's opinion that plaintiff is limited to one- and two-step instructions and determination that plaintiff could "complete routine 1 to 2 step assignments for up to 2 [hour] intervals," "represents a more significant limitation on the ability to perform work activity" than the ALJ's limitation to simple work. [JS at 7 (citing Zavalin v. Colvin, 778 F.3d 842, 847 (9th Cir. 2015) (simple work has an apparent conflict with a reasoning level 3 occupation); Rounds v. Comm'r of Soc. Sec. Admin., 807 F.3d 996, 1002-04 (9th Cir. 2015) (one- and two-step instructions have an apparent conflict with reasoning level 2 occupations)).] According to plaintiff, that is because each of the three alternative occupations the ALJ found plaintiff could perform require level 2 reasoning skills. He submits that the ALJ's failure to provide specific and legitimate reasons for rejecting Dr. Schumacher's opinion that plaintiff is limited to one- to two-step instructions, and instead determining -- without explanation -- that plaintiff was limited to "simple, routine tasks," was error that was not harmless because occupations requiring reasoning level 2 are inconsistent with Dr. Schumacher's assessed limitation. [Id. at 7-8.]

Defendant responds that the ALJ "properly considered the medical and nonmedical evidence to determin[e] Plaintiff's RFC." [Id. at 11.] He argues that while Dr. Schumacher found that plaintiff "could perform short simple instructions," "with regard to more detailed instructions [he found plaintiff] would be able to understand and remember shorter-simpler 1-2 step instructions." [Id. (citing AR at 23, 119-20).] He also argues that "the evidence shows" that while plaintiff "could perform simple one to two step instructions, he was not limited to that, and could

9

also perform some detailed and complex tasks." [Id. at 12 (citing AR at 119, 634).] Finally, defendant submits that although plaintiff contends that "a limitation for one to two step tasks is inconsistent with simple work and jobs with reasoning level 2," the ALJ "did not find Plaintiff's RFC limits him to one to two step tasks." [Id. (citing AR at 12).]

Defendant's arguments are not persuasive. The Court agrees with defendant that Dr. Schumacher found that plaintiff could perform "short[er]-simple[r] instructions" -- but only so long as they were limited to "1 to 2 step job instructions." [AR at 119 ("able to understand and remember shorter-simpler 1 to 2 step job instructions").] Additionally, contrary to defendant's argument, the evidence relied on by the ALJ to formulate plaintiff's RFC does *not* show that plaintiff "could also perform some detailed and complex tasks." [JS at 12 (citing AR at 119, 634).] In fact, Dr. Schumacher's report [AR at 119], to which the ALJ gave "great[] weight," reflects that "[m]ood symptoms restrict [plaintiff] f[ro]m sustaining difficult-detailed 3 to 4 step work duties over extended periods" but that he remains "able to understand and remember shorter-simpler 1 to 2 step job instructions." [Id. at 120.] Similarly, defendant's citation to Dr. Venter's opinion that plaintiff had "no impairment" in his ability to do detailed and complex instructions [AR at 634] is unavailing in light of the fact that Dr. Venter's opinion was explicitly *rejected* by the ALJ who determined that it was entitled to little weight because it was not consistent with the evidence of record. [Id. at 25.]

Finally, defendant's suggestion that plaintiff's reasoning level 2 argument is meritless simply because the ALJ did not find that plaintiff's "RFC limits him to one to two step tasks," merely begs the question of whether there was error caused by the ALJ's failure to explain why he was rejecting Dr. Schumacher's stated shorter-simpler 1-2 step instruction limitation in favor of a limitation to "simple, routine" tasks. According to the DOT, occupations with reasoning level 1 require the ability to "apply commonsense understanding to carry out simple one- or two-step instructions [and] [d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT App. C. In contrast, reasoning level 2 requires the individual to carry out "*detailed* but *uninvolved* written or oral instructions." DOT App. C (emphasis added).

Although a limitation to *simple repetitive tasks* may be consistent with reasoning level 2 (see, e.g., Zavalin, 778 F.3d at 847), a limitation to *one- to two-step instructions* may not be consistent with that reasoning level. See, e.g., Rounds, 807 F.3d at 1003-04 (finding an apparent conflict between the claimant's RFC limitation to one- to two-step tasks and the three representative jobs the ALJ concluded she was capable of performing, each of which required reasoning level 2). In Rounds, the ALJ confirmed at the outset of the VE's testimony that he would assume the VE's testimony "is based on [his] knowledge, education, training, and experience consistent with the DOT," unless the VE told him otherwise. Id. at 1003. The ALJ then concluded in his decision that the VE's testimony -- that the hypothetical individual with a limitation to one- to two-step tasks could perform reasoning level 2 occupations -- was consistent with the DOT, "and never directly addressed whether [the claimant's] limitation to one- to two-step tasks was consistent with jobs requiring Level Two reasoning and, if so, why." Id. Noting that the RFC limitation was worded in a similar fashion to the requirements for level 1 reasoning, the court rejected the Commissioner's argument that Rounds' inability to complete *multi-step tasks* "does not necessarily contradict the VE's opinion that [Rounds] has the ability to follow detailed *instructions*, as required in Level Two jobs." Id. The Ninth Circuit specifically noted that "[o]nly tasks with more than one or two steps would require 'detailed' instructions . . . [a]nd these are precisely the kinds of tasks Rounds' RFC indicates she cannot perform." Id. The Ninth Circuit found, therefore, that there was an apparent conflict between the claimant's RFC limitation to one- to two-step tasks, and the demands of reasoning level 2. Id. at 1003. Because the ALJ had not recognized the apparent conflict, the ALJ had not asked the VE to explain the conflict and the Ninth Circuit remanded the matter for further proceedings. Id. at 1003-04. The court also found that the ALJ's failure to reconcile the apparent conflict was not harmless because he "did not merely restrict Rounds to 'simple' or 'repetitive' tasks. Instead, he expressly limited her to 'one to two step tasks,' apparently to address her 'moderate' problems with memory and concentration." Id. at 1004.

Here, plaintiff contends (and the Court agrees) that if -- consistent with the ALJ's determination that Dr. Schumacher's opinion was entitled to "great[] weight" -- the ALJ had

adopted Dr. Schumacher's opinion that plaintiff was limited to performing tasks with shorter-simpler one- to two-step instructions, pursuant to Rounds that limitation would have been inconsistent with the three reasoning level 2 occupations the ALJ determined, based on the testimony of the VE, that plaintiff could perform with an RFC limitation to "simple, routine tasks." [JS at 7-8.]

The Court also agrees that the ALJ did not provide a specific and legitimate reason for rejecting Dr. Schumacher's opinion limiting plaintiff to one- and two-step instructions and determination that plaintiff could "complete routine 1 to 2 step assignments for up to 2 [hour] intervals." The Court also determines that, consistent with Rounds, the ALJ's error was not harmless.

Remand is warranted on this issue.

### 3. Critical Supervision

Dr. Schumacher determined that plaintiff had moderate limitations in interacting appropriately with the general public, and in accepting instruction and responding appropriately to criticism from supervisors. [AR at 120.] He explained that "[s]tress from close interactions with the general public and critical supervision aggravates [plaintiff's] mood-anger symptoms." [Id.] Accordingly, he determined that plaintiff "can engage in routine contacts with coworkers and employers." [Id.]

Notwithstanding the "great[] weight" he gave to Dr. Schumacher's opinion, the ALJ determined -- without explanation -- that plaintiff "can *frequently* respond appropriately to supervisors and coworkers and occasionally respond appropriately to the public." [Id. at 20 (emphasis added).] Plaintiff contends that because the ALJ did not include any work-related limitation with respect to plaintiff's inability to withstand criticism from supervisors, the hypothetical to the VE was incomplete, the "record is not clear whether any work is left when unable to tolerate critical supervision from supervisors," and the VE's testimony, therefore, does not constitute substantial evidence. [JS at 9.]

Defendant responds that the ALJ properly found that plaintiff "could frequently respond

appropriately to supervisors, co-workers and the public on an occasional basis." [Id. at 10-11.] Defendant further contends that Dr. Schumacher "summed up [his] findings in narrative form by explaining stress from close interactions with . . . critical supervision aggravates Plaintiff's mood-anger symptoms, but he can engage in routine contacts with co-workers and employers." [Id. at 11 (citing AR at 120).]

However, as noted, Dr. Schumacher determined that plaintiff was moderately limited in his ability to accept instructions and respond appropriately to criticism from supervisors. [AR at 120.] Although he gave "great[] weight" to Dr. Schumacher's opinion, the ALJ did not explain how he made the determination that plaintiff can *frequently* respond appropriately to supervisors given the moderate limitation found by Dr. Schumacher in plaintiff's ability to respond appropriately to criticism from his supervisors. [Id. at 20.] Additionally, although the ALJ "translated" plaintiff's moderate limitation in his ability to interact with the general public into a limitation to *occasionally* responding appropriately to the public, he inconsistently -- and without explanation -- "translated" plaintiff's moderate limitation to respond appropriately to criticism from supervisors to an ability to *frequently* respond appropriately to supervisors. [Id.]

Accordingly, substantial evidence does not support the ALJ's RFC determination and remand is warranted on this issue.

### 4. **Work-related Reminders**

Dr. Schumacher determined that plaintiff had moderate limitations in the ability to respond appropriately to changes in a work setting and, therefore, would need brief reminders to follow through on work assignments. [Id. at 120.]

Plaintiff observes that the ALJ did not include any RFC limitation relating to plaintiff's need for reminders to follow through on work assignment changes, and that the incomplete RFC and hypothetical question to the VE "leaves the vocational expert's testimony as insubstantial." [JS at 10 (citation omitted).]

Defendant responds that the ALJ's limitation to "making simple work related decisions" "reasonably capture[s] Dr. Schumacher's opinion that Plaintiff may need brief reminders to follow

13

through on work or assignment changes." [Id. at 13 (citing AR at 20, 120).]

Because the matter is being remanded for the ALJ to reconsider plaintiff's RFC with respect to Dr. Schumacher's opinions that plaintiff is limited to occupations with one- and two-step instructions and determination that plaintiff could "complete routine 1 to 2 step assignments for up to 2 [hour] intervals," and to his opinion that plaintiff had moderate limitations responding appropriately to criticism from supervisors, the ALJ on remand shall also reconsider plaintiff's RFC with respect to his need for brief reminders to follow through on work assignments.

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

The Court has discretion to remand or reverse and award benefits. Trevizo v. Berryhill, 871 F.3d 664, 682 (9th Cir. 2017) (citation omitted). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Id. (citing Garrison, 759 F.3d at 1019). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. See Garrison, 759 F.3d at 1021.

In this case, there are outstanding issues that must be resolved before a final determination can be made. In an effort to expedite these proceedings and to avoid any confusion or misunderstanding as to what the Court intends, the Court will set forth the scope of the remand proceedings. First, the ALJ shall reassess the entire medical record, and all other evidence of record relevant to plaintiff's claim for DIB and SSI payments.[7] The ALJ must explain the weight afforded to each opinion and provide legally adequate reasons for any significant and probative portion of an opinion that the ALJ discounts or rejects, including a legally sufficient explanation for crediting one doctor's opinion over any of the others. Second, the ALJ shall reassess plaintiff's

---

[7] Nothing herein is intended to disrupt the ALJ's finding that plaintiff is unable to perform his past relevant work as a janitor. [AR at 26.]

14

subjective symptom statements and provide specific, clear and convincing reasons for discrediting his testimony, if warranted. Third, based on his reevaluation of the entire medical record, and assessment of plaintiff's subjective symptom testimony, the ALJ shall determine plaintiff's RFC. Fourth, the ALJ shall proceed to step five and determine, with the assistance of a VE if necessary, whether there are jobs existing in significant numbers in the regional and national economy that plaintiff can still perform. See Shaibi v. Berryhill, 870 F.3d 874, 882-83 (9th Cir. 2017).

## VII.

## **CONCLUSION**

**IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: January 14, 2020

*Paul L. Abrams*
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE